IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| **WINONA FAY HAWKINS,**<br>　　　*Plaintiff* | § <br> § <br> § | |
| v. | § <br> § | A-20-CV-889-DH |
| **KILOLO KIJAKAZI,**<br>**COMMISSIONER OF SOCIAL**<br>**SECURITY,** [1]<br>　　　*Defendant* | § <br> § <br> § <br> § | |

## MEMORANDUM OPINION AND ORDER

This is an appeal of a final decision of the Commissioner of the Social Security Administration denying an application for disability benefits. Before the Court are: Plaintiff's Opening Brief, Dkt. 14; Brief in Support of the Commissioner's Decision, Dkt. 16; and Plaintiff's Reply, Dkt. 17; as well as the administrative record, cited as "Tr."

### I. GENERAL BACKGROUND

On June 9, 2017, Plaintiff Winona Fay Hawkins filed applications for Title II Social Security Disability Insurance benefits and Title XVI Supplemental Security Income, alleging disability beginning May 2, 2012, due to rheumatoid arthritis, peripheral neuropathy, fibromyalgia, hearing loss, vision problems, thyroid disorder, degenerative disc disease, kidney disease, and back and neck problems. Tr. 83-84, 93-94. Hawkins was 46 years old on the original alleged onset date and 52 years old on

---

[1] On July 9, 2021, Kilolo Kijakazi assumed the office of Commissioner of the Social Security Administration, replacing Commissioner Andrew Saul. The Court automatically substitutes Kijakazi as Defendant pursuant to FED. R. CIV. P. 25(d).

the date of her application. Tr. 25, 83, 93, 275. Hawkins has completed the eighth grade, but has a GED education, completed in June 2002, and no past relevant work. Tr. 44, 314. Hawkins' claims were initially denied on August 17, 2017, Tr. 103-04, and again upon reconsideration on January 2, 2018. Tr. 103-04, 133, 135. During the hearing held on April 24, 2019, Hawkins amended her alleged onset date to November 23, 2015. Tr. 37-63. After the hearing, the Administrative Law Judge issued an unfavorable decision on November 6, 2019. Tr. 16-27.

In the decision, the ALJ found Hawkins met the insured status requirements through December 31, 2016, and she had not engaged in substantial gainful activity since November 23, 2015, the amended alleged onset date. Tr. 18. The ALJ found Hawkins suffered from the severe impairments of obesity, rheumatoid arthritis, osteoarthritis, fibromyalgia, chronic obstructive pulmonary disease, asthma, tobacco abuse, and depressive disorder, none of which met or medically equaled a listed impairment of 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 18-19. The ALJ determined Hawkins has the residual functional capacity to perform light work as defined in 20 CFR § 404.1567(b) and § 416.967(b) except:

> she is limited to occasional climbing of ramps and stairs, but is precluded from climbing ropes, ladders, and scaffolds. She is able to occasionally stoop, crouch, crawl, kneel, or balance. The claimant should avoid even moderate exposure to airborne irritants including dust, fumes, gases, and poor ventilation. She should avoid hazards including unprotected heights, open flames, and driving as a job duty. The claimant retains the ability to frequently reach, handle, finger, and feel. From a mental standpoint, the claimant is able to understand, remember, and carryout detailed but noncomplex instructions.

Tr. 20. The ALJ found that Hawkins was unable to perform her past relevant work, but would be able to perform other occupations in the national economy; namely routing clerk, retail marker, and counter attendant. Tr. 25-26. Thus, the ALJ determined that Hawkins was not disabled. Tr. 27.

On June 22, 2020, the Appeals Council denied Hawkins' request for review. Tr. 1-6. Hawkins has now exhausted her administrative remedies and seeks judicial review of the administrative proceedings under 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

The Social Security Act defines "disability" as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment ... which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine if a claimant is able to engage in "substantial gainful activity" (and therefore if he is disabled) the Social Security Commissioner uses a five-step analysis:

1. a claimant who is working, engaging in a substantial gainful activity, will not be found to be disabled no matter what the medical findings are;

2. a claimant will not be found to be disabled unless he has a "severe impairment";

3. a claimant whose impairment meets or is equivalent to an impairment listed in Appendix 1 of the regulations will be considered disabled without the need to consider vocational factors;

4. a claimant who is capable of performing work that he has done in the past must be found "not disabled"; and

5. if the claimant is unable to perform his previous work as a result of his impairment, then factors such as his age, education, past work experience, and residual functional capacity must be considered to determine whether he can do other work.

3

20 C.F.R. § 404.1520; *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994). A finding of disability or no disability at any step is conclusive and terminates the analysis. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). The claimant has the burden of proof for the first four steps; at step five, the burden initially shifts to the Commissioner to identify other work the applicant is capable of performing. *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990). Then, if the Commissioner "fulfills his burden of pointing out potential alternative employment, the burden ... shifts back to the claimant to prove that he is unable to perform the alternate work." *Id.* (citation omitted).

Judicial review of the Commissioner's final decision under the Social Security Act, 42 U.S.C. § 405(g), is limited to two inquiries: (1) whether substantial evidence supports the Commissioner's decision; and (2) whether the Commissioner correctly applied the relevant legal standards. *Kinash v. Callahan*, 129 F.3d 736, 738 (5th Cir. 1997). Substantial evidence is more than a scintilla of evidence but less than a preponderance—in other words, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995). The Court considers four elements of proof when determining whether there is substantial evidence of a disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *Id.* at 174. However, the reviewing court may not reweigh the evidence, try the issues de novo, or substitute its judgment for that of the Commissioner.

*Greenspan*, 38 F.3d at 236. The Court may only scrutinize the record to determine whether it contains substantial evidence to support the Commissioner's decision. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). If the Court finds substantial evidence to support the decision, the Court must uphold the decision. *Selders*, 914 F.2d at 617 ("If the ... findings are supported by substantial evidence, they are conclusive and must be affirmed."); 42 U.S.C. § 405(g). A finding of no substantial evidence will only be made where there is a conspicuous absence of credible choices or no contrary medical evidence. *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988).

### III. ANALYSIS

Hawkins argues on appeal that the RFC is not supported by substantial evidence because: (1) the ALJ failed to properly consider the opinion of consulting examiner, Janna Odie Cavanaugh, Psy.D., as supported by the opinion of Michele Quinton, LCSW, in making Hawkins' mental RFC determination; (2) the ALJ failed to adequately account for Hawkins' mild limitations in her ability to understand, remember and apply information, interact with others, and adapt or manage herself and moderate limitations on her ability to maintain concentration, persistence, and pace when assessing her RFC; and (3) the ALJ failed to adequately evaluate the opinion of APRN Jeannette Rodriguez in determining Hawkins' physical RFC. Dkt. 14, at 8. The Commissioner argues that the ALJ's RFC finding is based on substantial evidence and that the ALJ did not err in reaching his decision. Dkt. 16. The Court agrees with the Commissioner. The Court finds that substantial evidence supports

both the ALJ's RFC determination as well as the ALJ's determination that Hawkins was not disabled during the adjudicated period.

### A. ALJ's Evaluation of the Opinion of Consulting Examiner, Janna Odie Cavanaugh, Psy.D.

Hawkins first argues that the ALJ's mental RFC determination is not supported by substantial evidence because the ALJ failed to properly evaluate the opinion of consulting examiner, Janna Oddie Cavanaugh, Psy.D. as supported by the opinion of Michele Quinton, LCSW. The ALJ determined that Hawkins has the RFC to perform light work as defined in 20 CFR § 404.1567(b) and § 416.967(b) with the following mental limitations: "the claimant is able to understand, remember, and carryout detailed but noncomplex instructions." Tr. 20. Hawkins argues this finding is not supported by the record.

On November 29, 2017, Hawkins underwent a clinical interview and mental status examination with Janna Oddie Cavanaugh, Psy.D. Tr. 1657. Dr. Cavanaugh opined that Hawkins could understand, carry out, and remember basic instructions, but may have difficulty with more complex or multi-step instructions. Tr. 1663. She appeared incapable of social interaction on a consistent and independent basis, with supervisors, co-workers, and the public. Tr. 1663. She did not think Hawkins was capable of managing benefits in her own interests. Tr. 1664.

The ALJ need not accept Dr. Cavanaugh's opinion of Hawkins' limitations in determining her RFC status. The controlling regulations specifically provides that the ALJ need not "defer or give any special weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s), including those from

[Hawkins'] medical source." 20 C.F.R. § 404.1520c(a). Instead, the Commissioner is to consider all medical opinions and prior administrative medical findings using the same specific factors outlined in the rule, the most important of which are supportability and consistency. *Id.* at § 404.1520c(b)(2).

Here, the ALJ appropriately explained how she considered the factors of supportability and consistency. 20 C.F.R. § 404.1520c(a). After reviewing the record, the ALJ found Dr. Cavanaugh's opinion on Hawkins' limitations were not fully persuasive because the record contained "no longitudinal record of mental health treatment to support it." Tr. 24. Specifically, the ALJ listed various citations in the record "reflect[ing] normal mental examinations during the relevant period." Tr. 24, 1425. The ALJ then cites various examinations. Tr. 1425 (exam by Tres Aaron Barrera, M.D., on April 6, 2016); Tr. 1435 (exam by Tres Aaron Barrera, M.D., on November 11, 2015); Tr. 1505 (exam by Stephanie B. Knight, NP, on March 16, 2016); Tr. 1531 (exam by Allen L Dennis, M.D. on September 24, 2017); Tr. 1549 (exam by Sherrita C. Carter FNP-C on May 23, 2017); Tr. 1825 (exam by Tres Aaron Barrera, M.D., on July 10, 2017); Tr. 1888 (exam by Vijayrama Poreddy, M.D., on May 24, 2018); Tr. 1996 (exam by Stephanie Johnson, FNP-C, on December 30, 2016); Tr. 2007 (exam by Allen L Dennis, M.D., on February 11, 2017); Tr. 2019 (exam by Mark T. Malone, M.D., on March 7, 2017); Tr. 2082 (exam by Ryan G. Michaud, M.D., on July 25, 2017); Tr. 2140 (exam by Robert P. Wills, M.D., on February 1, 2018); Tr. 2197 (exam by Paul H. Le, M.D., on May 30, 2018); Tr. 2251 (exam by Josemaria Paterno, M.D., on December 12, 2018); Tr. 2262 (exam by Allen L. Dennis, M.D., on January

9, 2019); Tr. 2358 (exam by Jeannette E. Rodriguez, APRN, on January 31, 2019). The ALJ appropriately discussed the supportability and consistency of Dr. Cavanaugh's mental evaluation.

Hawkins counters that the record supports that she "was routinely screened for and assessed with mild to moderate depression." Dkt. 14, at 11. Hawkins cites to various questionnaires filled out by Hawkins in a doctor's office which her score was sufficient to reflect "moderate" or "mild" depression. Tr. 699, 715, 724, 745, 755-56, 773, and 780.[2]

A reviewing court may not reweigh the evidence or substitute its judgment for the ALJ's judgment even if the evidence weighs against the ALJ's determination. *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000). "In practice, this means that a reviewing court must affirm the Commissioner, even when the court disagrees with the Commissioner's decision, so long as it is supported by some evidence that any reasonable fact finder might accept." *Washington v. Barnhart*, 413 F. Supp. 2d 784, 791 (E.D. Tex. 2006). The ALJ's determination is based upon evidence in the record. Based on this, the Court finds the ALJ's mental RFC determination is supported by substantial evidence, and the ALJ did not commit error.

Additionally, Hawkins refers the Court to a check-the-box "Mental Capacity Assessment" by Licensed Clinical Social Worker, Michele Quintin. In this assessment, Quintin noted that Hawkins had mental impairments related to her chronic pain. Tr. 1645-47. Out of twenty-two categories in the assessment, Hawkins

---

[2] Hawkins testified at her hearing before the ALJ that she, "ha[s]'t really been diagnosed with that yet" when asked if she suffered from depression. Tr. 47.

8

was evaluated as having "none" or a "mild" degree of limitation in nineteen categories. She was deemed as "moderately" impaired in her ability to avoid or ignore distractions and her ability to manage psychologically based symptoms. Hawkins was determined to have a marked limitation only in her ability to work a full day without additional rest periods. Tr. 1647. The ALJ considered Ms. Quinton's opinion, noting that as a nonmedical source she is not qualified to make a medical assessment regarding Hawkins' functional and physical limitations; but, stating "her statements were considered when limiting claimant to detailed noncomplex tasks." Tr. 25. The ALJ is free to assign little to no weight to a brief and conclusory medical opinion or one that is unsupported by the evidence. *Perez v. Barnhart*, 415 F.3d 457, 466 (5th Cir. 2005) (citations omitted). Accordingly, the ALJ's treatment of Quintin's opinion was proper.

### B. ALJ's Treatment of Hawkins' Mental Limitations in Her RFC

The ALJ included the limitation on Hawkins' mental RFC that "the claimant is able to understand, remember, and carry out detailed but noncomplex instructions." Tr. 20. Hawkins argues that the ALJ's assessment of her RFC is in error, because the ALJ failed to include all the mental limitations the ALJ found to be supported by the evidence of record. At step three, the ALJ found that Hawkins had mild limitations in three out of four "Paragraph B" factors and a moderate limitation with regard to concentrating, persisting, or maintaining pace. Tr. 19-20. Hawkins complains that the ALJ erred in not including these limitations in her ultimate RFC.

9

To determine whether a mental impairment satisfies the requirements of a specific Listing and renders a claimant presumptively disabled, the agency must use the Psychiatric Review Technique. 20 C.F.R. § 416.920a. Using this technique, the ALJ must rate the degree of functional limitations in four areas: the ability to understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt and manage oneself. *Id.* at § 416.920a(c)(3). The ALJ rates the claimant's functional limitations in these four areas on a five-point scale: none, mild, moderate, marked, or extreme. *Id.* at § 416.920a(c)(4); *see* 20 C.F.R. Pt. 404, Subpt. P, app. 1 § 12.00F(2)(b). For an impairment to fall under a Listing, the impairment must satisfy what is called the "Paragraph B" criteria, which is a finding of at least one extreme or two marked limitations in these four areas. *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(A)(2)(b). The ALJ must document the application of the PRT in his decision by showing the history, examinations, and findings, and the ALJ must be specific about each functional area. *See* 20 C.F.R. § 414.920a(e)(4).

Here, the ALJ conducted the PRT inquiry regarding Hawkins' mental impairments, 12.04, Depressive Disorders, and 12.06, Anxiety-related Disorders. Tr. 19. The ALJ found that the severity of Hawkins' impairments did not meet or medically equal the Paragraph B criteria for any of these Listings because the ALJ found Hawkins to have only mild to moderate restrictions in each of the four categories of functioning. Tr. 20. Where Paragraph B criteria are not satisfied, the agency assesses the "Paragraph C" criteria for each Listing. 20 C.F.R. § Pt. 404,

Subpt. P, App. 1. The ALJ also considered the Paragraph C criteria for the above-mentioned Listings, but found that the criteria were not satisfied. Tr. 20. Hawkins complains that the ALJ's Paragraph B findings are inconsistent with her RFC.

After applying the Paragraph B criteria, the ALJ went on to accurately explain:

> The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at step 2 and 3 of the sequential analysis process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraph B of the adult mental disorders listings in 12.00 of the Listing of Impairments (SSR 96-8p).

Tr. 27.

Hawkins initially suggested that the ALJ's step two analysis should necessarily result in certain mental limitations included in the RFC. This is incorrect. As noted above, the limitations in the Paragraph B criteria are specifically not a residual functional capacity assessment.

Conceding the above argument, Hawkins further argues that, while an ALJ's psychiatric review technique is not equivalent to an RFC, it should be "consistent with the RFC determination." Dkt. 17, at 3. Hawkins argues that the ALJ's limitation that "the claimant is able to understand, remember, and carry out detailed but noncomplex instructions," does not incorporate the finding of a moderate limitations of concentration, persistence, or pace and mild limitations is social adaptation. Tr. 19-20. However, the Court finds that the ALJ's determination of Hawkins' RFC is consistent with his other findings. In *Bordelon v. Astrue*, the Fifth Circuit stated that "such restrictions to rare public interaction, low stress, and simple, one-to two-step

11

instructions reflect that the ALJ reasonably incorporated [Plaintiff's] moderate concentration, persistence, and pace limitations." 281 F. App'x 418, 422-23 (5th Cir. 2008). Similarly, in this case, the ALJ's RFC limited Plaintiff to "noncomplex instructions." Tr. 20.

The Fifth Circuit does not require the ALJ to incorporate a "limitation of concentration, persistence, or pace" into the hypothetical verbatim. *Bauer v. Berryhill*, No. 7:17-CV-128, 2018 WL 3999687, at *6 (N. D. Tex. July 27, 2018). The restrictions established by the ALJ here are analogous to the restrictions in *Bordelon*. Therefore, Hawkins' limitations regarding concentration, persistence, and pace as well as other limits on social adaptations are subsumed by the limitations regarding "noncomplex" work. *See Bonner v. Berryhill*, No. 4:17-CV-0641, 2018 WL 3756837, at *5 (S.D. Tex. Aug. 8, 2018) (stating that "the ALJ's RFC determination limiting Bonner to detailed but not complex work, with no forced pace/assembly line/production rate pace, reasonably incorporates Bonner's moderate difficulties in concentration, persistence, or pace."); *Zuniga v. Colvin*, No. 2:17-CV-35, 2017 WL 7411229, at *8 (S.D. Tex. Dec. 18, 2017) ("An ALJ need not include in the RFC the specific words 'moderate difficulties in the area of concentration, persistence, or pace' where, as here, the decision shows the ALJ considered those limitations in reaching the RFC determination"), *report and recommendation adopted*, No. 2:17-CV-35, 2018 WL 791377 (S.D. Tex. Feb. 6, 2018); *see also Herrera v. Berryhill*, 2017 WL 979077, at *4 (W.D. Tex. Mar. 13, 2017) (limiting a plaintiff to unskilled work took into

consideration limitations in concentrating, persisting, and maintaining pace); *Gipson v. Colvin,* Civ. No. H-12-32582013 WL 5945649, at *10 (S.D. Tex. Nov. 6, 2013).

Lastly, "[i]f the administrative law judge's hypothetical omits a recognized limitation and the claimant or his representative is afforded the opportunity to correct deficiencies in the administrative law judge's question by mentioning or suggesting to the vocational expert any purported defects in the hypothetical questions there is no reversible error." *Bauer,* 2018 WL 3999687, at *6. Here, Hawkins' representative had a fair opportunity to correct any deficiencies in the ALJ's hypothetical and declined to do so. Tr. 62. Thus, even if the ALJ failed to adequately assess Hawkins' RFC, which he did not, that error would be harmless.

### C. The ALJ's Evaluation of the Opinion of APRN Jeannette Rodriguez

Hawkins' last argument is that the ALJ's RFC is not supported by substantial evidence because he failed to properly evaluate the opinion of APRN, Jeannette Rodriguez. Dkt. 14, at 17. On June 1, 2018, APRN Jeannette Rodriguez of Lone Star Circle Care completed a form regarding Plaintiff's eligibility for in-home and family support. Tr. 1677. Nurse Rodriguez noted that Plaintiff had a lifetime disabling condition and could not work. *Id.* She opined Hawkins could not engage in sitting, standing, or walking, or any postural activities and could not lift any weight. Tr. 1678-79. Rodriguez stated that Hawkins' disability was related to her fibromyalgia and knee pain. Tr. 1679. The ALJ concluded that this opinion was not persuasive because the limitations were not supported by the record and physical examinations have generally revealed normal ambulation, good range of motion, intact reflexes, and no

13

synovitis. Tr. 24. Hawkins complains that ALJ's RFC determination is in error because he "mischaracterized" the medical records. Hawkins asserts that the record contains evidence of her impaired range of motion, and thus the ALJ's opinion is not based on substantial evidence.

The ALJ cited evidence in the record showing that Hawkins' physical examinations have revealed normal ambulation, good range of motion, intact reflexes, and no synovitis. Tr. 24. On November 2, 2017, Mark Santman, M.D., noted that "she uses a walker because sometimes she gets dizzy," "balance problems due to lower extremity incoordination is not present" and "ambulates normal[ly]" with an 80% active range of motion. Tr. 1632-33. Mohammed Arif Ahmed, M.D., found that Hawkins had a normal range of motion in her hips. Tr. 2150. Dr. Ahmed further found that Hawkins had "no evidence of synovitis" while not on arthritis medications and her knees had "no evidence of effusion." Tr. 2180. On January 18, 2019, Hawkins reported to the Emergency Room complaining of hand cramps, tingling, and nausea. Tr. 2416. She was described as "negative for back pain, myalgias, and neck pain as well as numbness." *Id.* Her musculoskeletal was described as "normal range of motion with no edema." Tr. 2417. She is described as having "normal reflexes, muscle tone, and coordination." *Id.* On that same visit, the "patient ambulated out of ED with no obvious distress." Tr. 2419. There was no report that Hawkins used a walker on her visit to the ER.[3]

---

[3] Additionally, the step three determination is based on objective clinical findings, and not a claimant's allegations and self-reports to medical professionals. According to the regulations, clinical examinations should be done with and without the use of the hand-held assistive device to determine whether, or the extent to which, an individual is able to ambulate without

14

The ALJ further noted that "the objective medical evidence of record fails to substantiate the claimant's assertion of disabling neck and back pain stemming from rheumatoid and osteoarthritis." Tr. 24. He noted that "the results of objective testing have been virtually unremarkable." *Id.* Additionally, Hawkins testified that she drives, goes to the grocery store on her own, walks a block without stopping, cooks, and can lift five pounds. Tr. 44, 50, 53, 55-56. She testified that she watches television and works on adult coloring books. Tr. 55. Thus, the Court finds that the ALJ's decision is supported by substantial evidence.

To the extent Hawkins argues the evidence she cites in her brief requires a different RFC than that found by the ALJ, she asks this Court to reweigh the evidence and substitute its judgment for that of the ALJ, something this Court cannot do. *Laffoon v. Califano*, 558 F.2d 253, 254 (5th Cir. 1977) (citations omitted) (explaining the reviewing court "may neither reweigh the evidence nor substitute its judgment for that of the Secretary.")

Additionally, the law is clear that "among the opinions by treating doctors that have no special significance are determinations that an applicant is 'disabled' or 'unable to work.'" *Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003). "These determinations are legal conclusions that the regulations describe as 'reserved to the Commissioner.'" *Id.* The ALJ need not consider Nurse Rodriguez's opinion that

---

assistance. *See* 20 C.F.R. pt. 404, subpt. P, app. 1 § 1.00(J)(4) (2020). Here, Hawkins failed to identify any examination where this was done, or any other objective medical basis to establish listing-level ineffective ambulation. *See* 20 C.F.R. part 404, subpt. P, app. 1, § 1.00B2b(1) (2020).

Hawkins was disabled. The Court finds that the ALJ's opinion is based upon substantial evidence and the consideration he afforded Nurse Rodriguez's opinion was not in error.

## IV. CONCLUSION

Based on the foregoing, the Court hereby **ORDERS** that the decision of the Commissioner is **AFFIRMED**.

**SIGNED** on October 21, 2021.

_____
DUSTIN M. HOWELL
UNITED STATES MAGISTRATE JUDGE